891 F.2d 1074
 58 USLW 2382
 The UNITED STATES, Appellee,
v.
Joseph F. ROSA, William A. Kostrick, Martin R. Antonelli,
Daniel J. Campbell, Paul F. Connelly, Jr., William Anthony
Dadamo "Machine Gun Tony", Vivian Davis, Jorge Diaz, William
Edgar Gates "Butch", Donna Marie George, Susan Francis
George, Raymond G. Ily, Gary Francis Jones "Spanky", Larry
H. Linn, James Luketic "Lukey", Victor E. Marchitello,
Richard Wayne Naugle, Mark D. Nicklow, Robert William Noble,
Timothy O'Conner, Perry C. Perrino, Ronald R. Plisco "Sam
Catalano", "Fat Sam", Charles H. Readel, Richard Reshenberg,
Dino Romano, William Duane Smith, Richard A. Stefanik
"Wrinkle", Diania Lynn George Wertz "Dee Dee Wertz".
Appeal of Ronald R. PLISCO.
 No. 89-3013.
 United States Court of Appeals,
Third Circuit.
 Argued June 8, 1989.
Decided Dec. 8, 1989.
Rehearing and Rehearing In Banc Denied Feb. 5, 1990.
 
 Charles D. Sheehy, Acting U.S. Atty., Paul J. Brysh (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.
 Joel Hirschhorn, P.A. (argued), Miami, Fla., for appellant.
 Before BECKER, STAPLETON and GARTH, Circuit Judges.
 GARTH, Circuit Judge:
 
 
 1
 The central issue presented by this appeal is whether the Jencks Act, 18 U.S.C. § 3500, which by its terms is limited to providing the defendant with government witnesses' statements only after the witness has testified on direct examination in the trial of the case, should be extended to providing government witnesses' statements at sentencing hearings.
 
 I.
 
 2
 Appellant Ronald L. Plisco was one of 28 individuals indicted in a 113 count indictment which charges narcotics, firearms and tax offenses. He was charged in Count 1 with conspiracy to possess cocaine with intent to distribute more than 5 kilograms of cocaine; and in Count 11 with possession of a "multi-kilogram quantity of cocaine with intent to distribute," all in violation of 21 U.S.C. §§ 846 and 841(a)(1) respectively.
 
 
 3
 On August 1, 1988, as a result of a plea agreement, the government dismissed Count 1 and Plisco pled guilty to Count 11. On December 29, 1988, Plisco's motion to withdraw his guilty plea, or, in the alternative, to enforce the plea agreement was denied, and a sentencing hearing was held.
 
 
 4
 At the sentencing hearing, Marvin Droznek, a government witness who was also charged in the indictment and who had also entered a plea of guilty, testified that: 1) he had known Plisco for many years; 2) during 1984 he had sold cocaine and had wanted to sell increased quantities of that substance; 3) to finance such an operation, he asked Plisco for funds and received $80,000 from Plisco who, Droznek testified knew the money was to be used to purchase cocaine; and 4) Plisco received some cocaine from Droznek at cost.
 
 
 5
 Plisco's testimony conflicted with Droznek's as to the source and ownership of the $80,000. Plisco contended that he had been entrusted with some $300,000 to hold for Droznek. Plisco's wife, Faith, then testified that the money given to Droznek was a return of Droznek's money that they had been holding.
 
 
 6
 Plisco argued that the government did not live up to its plea agreement which required the government to submit an application to the Witness Protection Program on his behalf. Faith Plisco stated that an officer from the U.S. Attorney's Office informed her on or about September 18, 1988 that an application for the program had been mailed and that they were waiting for "D.C." and that there would be no problem.
 
 
 7
 On the other hand, the government contended that Plisco did not live up to the plea agreement and did not fully cooperate with the government as he had promised. The government also contended that Plisco was not truthful. In addition, a U.S. Attorney testified that he had no recall of Faith Plisco's conversation concerning the witness program, and that no application had ever been submitted.
 
 
 8
 Plisco was sentenced to 15 years and a fine of $50,000 and is presently incarcerated. At the sentencing hearing, Droznek testified as a government witness. At the outset of cross-examination, Plisco's counsel moved for Jencks material. (A233-234). The district court reserved its decision until later in the hearing. When Plisco again pressed for the production of Jencks material in order to continue his cross-examination of Droznek, the district court denied Plisco's request stating:
 
 
 9
 THE COURT: Mr. Hirschhorn, the Third Circuit dealt with this exact question in the case of the United States versus Murphy, which is cited at 569 F.2d 771, in which it held that Jencks material was only applicable to trial; and trial in this context means a proceeding being conducted for the purpose of determining guilt or innocence.
 
 
 10
 They cited also a Fifth Circuit case; but, of course, we're governed by the Third Circuit decisions. This is not a proceeding to determine guilt or innocence; and, therefore, you are not entitled to Jencks material.
 
 
 11
 (A244-245).
 
 
 12
 On appeal, Plisco argued that the district court erred in holding that: 1) his plea of guilty was constitutionally valid; 2) the government had not breached its plea agreement; 3) Plisco could not withdraw his guilty plea, or in the alternative, enforce the plea agreement; and 4) it was not necessary for the government to provide Jencks Act material to Plisco pursuant to 18 U.S.C. § 3500. We will vacate Plisco's sentence and remand for resentencing.
 
 II.
 
 13
 We need not deal at length with three of the four points of error assigned by Plisco on this appeal because our independent review of the record satisfies us that the district court did not err in upholding Plisco's guilty plea; in holding that the government did not breach its plea agreement with Plisco; and in holding that Plisco could not withdraw or enforce his plea agreement. However, the district court's ruling which deprived Plisco of Jencks Act material at his sentencing hearing stands on different footing. Our review of that ruling is plenary.
 
 III.
 
 14
 The Jencks Act, 18 U.S.C. § 3500, states in relevant part:
 
 
 15
 (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
 
 
 16
 (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 (e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means--
 
 
 20
 (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
 
 
 21
 (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
 
 
 22
 (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
 
 
 23
 In Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), the case from which the Jencks Act takes its name, the Supreme Court set forth its reason for permitting the defendant access to documents in the government's possession at the time of trial. Justice Brennan, writing for the Court, stated:
 
 
 24
 Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony.
 
 
 25
 Jencks, 353 U.S. at 667, 77 S.Ct. at 1013.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.
 
 
 29
 Id., 353 U.S. at 671, 77 S.Ct. at 1015 (quoting U.S. v. Reynolds, 345 U.S. 1, 12, 73 S.Ct. 528, 534, 97 L.Ed. 727 (1953)).
 
 
 30
 The district court, as we have noted above, rejected Plisco's motion for Jencks material at the sentencing hearing relying on United States v. Murphy, 569 F.2d 771 (3d Cir.), cert. denied, 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978). In light of the express language found in 18 U.S.C. § 3500 and our holding in Murphy, that reliance was understandable. However, Murphy involved a request that Jencks Act material be produced at a pretrial suppression hearing, not at a post-trial sentencing hearing. Thus, when the district court rejected Murphy's request, we affirmed the district court, emphasizing that Jencks Act material "was not available prior to trial." Murphy, 569 F.2d at 774.
 
 
 31
 Murphy, however, recognized that some authority existed to require Jencks Act material at post-trial hearings, id., but because Murphy had not involved a post-trial hearing, those authorities were not relevant in a pretrial context. But, even those cases to which Murphy referred, were not post-trial sentencing cases. Both United States v. White, 342 F.2d 379 (4th Cir.), cert. denied, 382 U.S. 871, 86 S.Ct. 148, 15 L.Ed.2d 109 (1965), and United States v. Kelly, 269 F.2d 448 (10th Cir.1959), cert. denied, 362 U.S. 904, 80 S.Ct. 615, 4 L.Ed.2d 555 (1960), imply that Jencks Act material is to be furnished at proceedings held pursuant to 28 U.S.C. § 2255.
 
 
 32
 Moreover, in 1983, some five years after Murphy was decided, Rule 12(i) of the Federal Rules of Criminal Procedure was amended to require the production of Jencks Act material at motions to suppress evidence, thus superseding the holding in Murphy.
 
 
 33
 Federal Rule of Criminal Procedure 12(i) now provides:
 
 
 34
 (i) Production of Statements at Suppression Hearing. Except as herein provided, rule 26.2 [Jencks Act] shall apply at a hearing on a motion to suppress evidence under subdivision (b)(3) of this rule.[1]
 
 
 35
 The first, and virtually the only case, to address the question of whether Jencks Act material must be furnished at a sentencing hearing was decided in the federal district court in the Eastern District of New York some few months after this court's decision in Murphy was filed.[2] In United States v. Fatico, 458 F.Supp. 388 (E.D.N.Y.1978), aff'd, 603 F.2d 1053 (2d Cir.1979), cert. denied, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980), Judge Weinstein, among other things, held that:
 
 
 36
 [T]he need for Jencks discovery is just as great at a sentencing hearing to determine a critical fact not established at trial that directly affects the defendant's liberty, as it would be at trial.
 
 
 37
 Fatico, 458 F.Supp. at 400. Holding that such material must be furnished for sentencing hearings where government witnesses testified, Judge Weinstein's reasoning with respect to the defendant in Fatico is just as applicable to the situation which confronted Plisco at his sentencing:Unable to cross-examine the informants, [here, Droznek] the defendant's only hope was to attack the credibility of the Government agents by attempting to impeach them with their prior statements and reports. Without this limited weapon, the defendant remained virtually defenseless. Nor could the defendant rely on a subsequent trial to rectify any inaccurate findings. Unlike a pre-trial hearing, which may be followed by a trial at which the defendant is afforded full procedural protections, sentencing is the end of the line. The defendant has no opportunity to relitigate factual issues resolved against him. Where the facts relied upon at sentencing have already been determined at trial, this is of little, if any, consequence. But in this case, where, after a guilty plea, the critical fact was litigated for the first time at the sentencing hearing, the defendant is irreparably disadvantaged.
 
 
 38
 Id.
 
 
 39
 There can be little doubt that Jencks Act material might have aided Plisco in his cross-examination of the government's witness, Droznek. The issues before the district court and on appeal all involved Plisco's participation in drug dealing. Droznek, at the sentencing hearing, not only testified about his and Plisco's association in a life of crime which included, among other things, physical intimidation, loansharking, gambling, gun-running and theft, but he also heavily implicated Plisco in cocaine and other substantial drug sales.
 
 
 40
 It was therefore to be expected that at allocution, Plisco would claim that Droznek had not testified truthfully.
 
 
 41
 THE WITNESS [Plisco]: Yes, Your Honor. I'm sorry for everything that I've done and that I'm guilty of; that all the things you've heard today from Mr. Droznek on the witness stand are not true. It is true that since I've been arrested in New Castle, Armstrong County, I believe, I've gotten out of the numbers business and the sports business, and I was just going along making an honest living and turned my back on things; and I didn't want any involvement with anything or any people or any--anybody.
 
 
 42
 And, Your Honor, I beg you for leniency in the case, understanding.
 
 
 43
 MR. HIRSCHHORN: Just let me, Your Honor--I need to ask Mr. Plisco a question.
 
 
 44
 (Off the record discussion.)
 
 
 45
 THE WITNESS: Not all the things that Droznek said, Your Honor, today on the witness stand in front of you are true. Not all of them are true.
 
 
 46
 THE COURT: I understand you to say that, they were not true.
 
 
 47
 MR. HIRSCHHORN: I understand him to say all of them were not true, but that's not exactly what he meant. What he meant is not all of them.
 
 
 48
 THE WITNESS: Not all of them are true, Your Honor.
 
 
 49
 THE COURT: I understand your position.
 
 
 50
 A282-283.
 
 
 51
 In sentencing Plisco to prison for 15 years and fining him $50,000, the district court had evidently been impressed with or at least had taken into consideration, the testimony given by Droznek. In imposing sentence, the district court said:
 
 
 52
 THE COURT: Mr. Plisco, not only were you involved in drug trafficking, but you were also involved in financing other drug traffickers. The severity of your crime must be impressed upon you.
 
 
 53
 The use of illegal drugs is an extremely serious problem in our society. Those who sell illicit drugs threaten the lives and the health of persons who use those drugs and jeopardize the people victimized by drug users who commit crimes to support their habits.
 
 
 54
 Mr. Plisco, you must realize the serious consequences of your activities. You must resolve never again to become involved with drugs or the people who sell or use drugs.
 
 
 55
 A283-284.
 
 
 56
 In short, Droznek's testimony, without an attack on its credibility if such was available, not only substantiated the government's claims of Plisco's involvement in drug dealing, but it also attributed a substantial criminal history to Plisco. As the Fatico passage which we have reproduced above indicates in such a case, Plisco's "only hope was to attack the credibility of [Droznek] by attempting to impeach [him] with [his] prior statements and reports. Without this limited weapon [Plisco] remained virtually defenseless...." 458 F.Supp. at 400.
 
 
 57
 We believe the sentence imposed on a defendant is the most critical stage of criminal proceedings, and is, in effect, the "bottom-line" for the defendant, particularly where the defendant has pled guilty. This being so, we can perceive no purpose in denying the defendant the ability to effectively cross-examine a government witness where such testimony may, if accepted, add substantially to the defendant's sentence. In such a setting, we believe that the rationale of Jencks v. United States, supra, and the purpose of the Jencks Act would be disserved if the government at such a grave stage of a criminal proceeding could deprive the accused of material valuable not only to his defense, but to his very liberty.[3]
 
 IV.
 
 58
 We will affirm Plisco's conviction, but we will vacate his sentence and remand the case to the district court for further proceedings consistent with the foregoing opinion.
 
 
 
 [1]
 The second sentence of the Rule, not relevant for our purposes in this case, states as follows:
 For purposes of this subdivision, a law enforcement officer shall be deemed a witness called by the government, and upon a claim of privilege the court shall excise the portions of the statement containing privileged matter.
 
 
 [2]
 Surprisingly, in the years since United States v. Fatico, 458 F.Supp. 388 (E.D.N.Y.1978) was decided, no other court, and in particular, no court of appeals has had the occasion to address this issue
 
 
 [3]
 Although Plisco's sentence was not governed by the Sentencing Guidelines because his offense occurred in 1984 (see Sentencing Guidelines 1B1.1), our holding today may assume even greater importance when it is implemented in Guidelines cases. In those cases, the judge has much less leeway to moderate a sentence based upon perceived weaknesses in the government's case, but rather is obliged to sentence within Guideline range based upon specific fact findings which need not be made beyond a reasonable doubt, see United States v. McDowell, 888 F.2d 285 (3rd Cir.1989) (preponderance standard applies), and which need not be based upon evidence which is admissible under the Federal Rules of Evidence. See Fed.R.Evid. 1101(d)(3)
 Thus, for example, a violation of 21 USC § 841(a)(1), the crime to which Plisco pled guilty, has a base offense range which varies from a base level 6, which can lead to no prison sentence, to a base level 42, which can lead to life imprisonment for even a first-time offender. See Sentencing Guidelines § 2D1.1-3, p. 5.2. The severity of the sentence will depend solely on what is demonstrated at the trial, or in the case of a guilty plea such as Plisco's, at the sentencing hearing. In such a circumstance, the need by a defendant for prior statements made by government witnesses called to testify against him, may be even more imperative in the future when his sentence is mandated by the Guidelines.