USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1176 UNITED STATES OF AMERICA, Appellee, v. JULIAN DUPONT, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Boudin, Circuit Judge, _____________ and Pollak,* Senior District Judge. _____________________ ____________________ Howard J. Castleman with whom Janis M. Berry, by Appointment of ____________________ _______________ the Court, and Ropes & Gray were on brief for appellant. ____________ David A. Vicinanzo, Assistant United States Attorney, with whom ___________________ Peter E. Papps, United States Attorney, and Jean B. Weld, Assistant _______________ _____________ United States Attorney, were on brief for the United States. ____________________ January 31, 1994 ____________________ ____________________ *Of the Eastern District of Pennsylvania, sitting by designation. BOUDIN, Circuit Judge. Julian Dupont was indicted in _____________ November 1988, together with many others, for participating in a drug trafficking ring headed by Jean Lemieux. Pursuant to a plea agreement Dupont pleaded guilty to one count charging him with conspiracy to possess with intent to distribute. In the agreement the government stipulated with Dupont that Dupont had conspired to distribute about 4.5 kilograms of cocaine. The government also agreed to recommend a sentence of five years' imprisonment. Despite that recommendation, on August 15, 1989, the district court sentenced Dupont to seven years in prison.1 In this case, the most recent of several attempts by Dupont to alter his sentence or limit forfeitures, Dupont in a section 2255 proceeding persuaded the district court that he was entitled to be resentenced. The court found that at the original sentencing Dupont and his counsel had not been provided sufficient time to review the pre-sentence report and that findings had not been made on certain disputed issues, as provided for in the then-applicable version of Fed. R. Crim. P. 32(c)(3). The court scheduled a resentencing hearing and made clear that either side could present evidence. ____________________ 1The Sentencing Guidelines did not apply to the offense and the district court was limited only by the statutory maximum of 20 years. -2- -2- At the resentencing hearing on February 9, 1993, the government offered two witnesses. Most important, Lemieux-- whose sentence had been reduced from almost 20 years to seven years in exchange for his help to the government in several trials--appeared. Countering Dupont's claim that he was only a minor player in the ring, Lemieux testified that Dupont introduced Lemieux to a new source of cocaine, that Dupont acted as his partner and shared profits for a year while Lemieux was doing kilogram size deals, and that Dupont joined him on over 10 trips to collect cocaine from the new source. Agent Ryan, who had testified at the first sentencing hearing, testified again. He reaffirmed that over $20,000 had been seized at Dupont's residence, and he now described the DEA's seizure of a 125 pound scale, two rifles and a .25 calibre handgun, which was found in Dupont's bedroom. Ryan, who had not been present at the arrest, was apparently relying on information from the arresting agents. He conceded that only small amounts of cocaine had been seized at the arrest. The district court then resentenced Dupont to seven years' imprisonment. The court credited Lemieux's testimony and found that Dupont was "a substantial drug dealer" who had offered no assistance to the government. The court described the items found in the apartment as tools of the trade. It also referred to the role of Carlos Arboleda--a major Florida -3- -3- source, see United States v. Arboleda, 929 F.2d 858 (1st Cir. ___ _____________ ________ 1991)--in supplying the Lemieux conspiracy. Lemieux had testified that Dupont knew that Arboleda was one of Lemieux's other sources of cocaine. On this appeal from the resentencing, Dupont begins his attack by arguing that this court should follow the Third Circuit and hold that the government must produce to the defense prior statements of the witnesses whom it offers at sentencing proceedings. See United States v. Rosa, 891 F.2d ___ _____________ ____ 1074 (3d Cir. 1989).2 This rule, urges Dupont, would be a proper exercise of this court's supervisory power in view of the enormous impact of sentencing determinations. No request for such statements was made by defense counsel at the resentencing, and no such statements were produced by the government. We think that there is little reason to consider extending Jencks retroactively in a case where, even if the ______ Jencks Act applied by its own terms, no appeal would be permitted because no request for the materials was made. Jencks Act, 18 U.S.C. 3500(b) (materials to be produced "on motion of the defendant); see United States v. Mack, 892 F.2d ___ _____________ ____ ____________________ 2The Jencks Act, 18 U.S.C. 3500, codifying Jencks v. ______ United States, 353 U.S. 657 (1957), imposes this requirement ______________ with respect to government witnesses at trials. Effective December 1, 1993, a new amendment, Fed. R. Crim. P. 32(e), codifies Rosa and extends Jencks to sentencing hearings, ____ ______ provided that a request is made by defendant. See Fed. R. ___ Crim. P. 26.2. -4- -4- 134, 137 (1st Cir. 1989), cert. denied, 111 S. Ct. 162 ____________ (1990). Dupont could easily have made the request in the district court. While a district court might well be reluctant to make new law by adopting the Third Circuit's approach simpliciter, nothing prevented Dupont from trying to ___________ show the district court why prior statements were critically important in this case. We might overlook the failure to make either a request or a detailed showing if there were any indication that a miscarriage of justice had resulted. On the contrary, in this instance the discrepancies in Ryan's testimony between the first and second hearing are minor and would have been apparent from reviewing a transcript of the first hearing. As to Lemieux, a far more damaging witness, the district court deemed him credible despite the very large reduction in sentence he had received for his past aid to the government. There is no hint that anything in Lemieux's prior statements would have altered that judgment, and pure speculation is no evidence that justice has miscarried. Dupont's brief next recasts the Jencks Act argument as a ______ Brady argument, contending that the government failed to _____ disclose exculpatory material. See Brady v. Maryland, 373 ___ _____ ________ U.S. 83 (1963). The main materials identified are prior -5- -5- statements of Lemieux and statements or notes of Agent Ryan.3 While impeachment material may sometimes qualify as exculpatory under Brady, we have no reason to believe that _____ any of the prior statements significantly undermined the testimony of the government witnesses. There is even less basis for finding "a reasonable probability" that disclosure would have altered the result. United States v. Bagley, 473 _____________ ______ U.S. 667, 682 (1985) (plurality opinion). Next, Dupont contends that "due process requires that a defendant not be sentenced upon materially untrue assumptions or misinformation" and argues that such a violation occurred in this case. Although the Supreme Court used related language in Townsend and it is echoed in our decisions,4 it ________ would be hard to find a general statement so often misunderstood. Only a naive observer could doubt that defendants are from time to time convicted and sentenced on ___ ____________________ 3Dupont also says that the government did not disclose that it had returned $75,000 seized from Lemieux so that he could pay attorney's fees. This fact, stated in the Arboleda ________ decision, 929 F.2d at 865 n.10, pales in importance when compared with the drastic reduction in sentence received by Lemieux, a benefit fully disclosed in the resentencing hearing. 4Townsend v. Burke, 334 U.S. 736, 740-41 (1948) (due ________ _____ process violated, "while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue") (Jackson, J.); United States v. Curran, 926 F.2d 59, 61 (1st _____________ ______ Cir. 1991) ("defendant has a due process right to be sentenced upon information which is not false or materially incorrect"). -6- -6- the basis of "materially untrue assumptions or misinformation": witnesses may lie, or make mistakes, and trial juries or sentencing judges may believe them. It does happen. Yet no one supposes that a defendant can relitigate any issue of fact at any time he or she likes merely by invoking the due process clause and offering to show that a mistake was made. "[E]ven an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law." Townsend, 334 U.S. at 741. Townsend involved a ________ ________ defendant, unrepresented by counsel at sentencing, whose sentence was seemingly enhanced based on three nonexistent criminal convictions. Justice Jackson explained (id. at 741) ___ that it was the false foundation of the sentence, "which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process." See also id. at 739 ("absence of counsel," ________ ___ where prejudicial, is "violation of due process").5 Today, a whole skein of complex rules determines which issues may be relitigated, in what circumstances, at what ____________________ 5Evidently, the record before the Supreme Court in Townsend did not make clear whose fault it was that the ________ sentencing judge credited the defendant with three nonexistent convictions. Justice Jackson contented himself with saying: "We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecutor's submission of misinformation to the court or was prejudiced by the court's own misreading of the record." Id. at 740. ___ -7- -7- stage, and under what standard of review. See generally _____________ W. LaFave & J. Israel, Criminal Procedure (1984); "Project: __________________ 22nd Annual Review of Criminal Procedure," 81 Georgetown L.J. _______________ 853 (1993). Thus, a prosecutor's knowing use of perjured testimony may pose one issue, 2 LaFave at 19.5; newly ______ discovered evidence a different issue, 3 id. at 27.3(d); ___ and simple disagreement with a jury's reasonable inference yet another, 3 id. at 26.5. In criminal procedure, as ___ elsewhere, generalities are no substitute for analysis. Here, Dupont argues that the court relied on materially untrue assumptions and misinformation when it concluded at sentencing that Dupont was a substantial drug dealer and that the items seized in his apartment were tools of the trade and that Arboleda had some relationship to the conspiracy. An examination of the argument shows it to be a garden variety disagreement with the district court's finding that Dupont played a significant role in the conspiracy. At best, this is a finding that would be subject, even under the more rigorous Sentencing Guidelines, to review based upon the "clearly erroneous" standard. 18 U.S.C. 3742(e). We think that the finding is amply supported by Lemieux's testimony. Dupont's quarrels with details are wholly unimportant. It makes no difference whether, as Dupont contends, the over $20,000 found were gambling proceeds, the scale calibrated in ounces rather grams, or the rifles used for hunting. Once -8- -8- the district court credited Lemieux's testimony, Dupont was going to be labeled as a substantial drug dealer regardless of what tools he possessed or of Arboleda's precise role. The district judge, whose credibility determinations are entitled to great weight, noted in his post-sentence written findings that he heard Lemieux testify not only at the hearing but in a number of jury trials. As for the length of the sentence, which Dupont also attacks, this is largely unreviewable for pre-guideline sentences, and Dupont does not come within a mile of raising a serious constitutional issue regarding length. A seven- year sentence is no tap on the wrist, but in one respect Dupont may be fortunate: a guideline sentence for 3.5 to 5 kilograms of cocaine, even for a first time offender, is 97 to 121 months, and under the guidelines, there is no parole. See U.S.S.G. 2D1.1(c)(7) and sentencing table. ___ In conclusion, we note that on this appeal Dupont has had the benefit of a sophisticated brief and an able oral argument by defense counsel. His problem lies not in his representation, but in the fact that in the resentencing proceeding he received a legally valid sentence. That sentence is affirmed. ________ -9- -9-