NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1981
_____

UNITED STATES OF AMERICA

v.

MARKEITH JOHN WEBB
a/k/a John Markeith Webb,
                                Appellant


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 5-09-cr-00755-001)
District Judge:  The Honorable Joel H. Slomsky

Submitted Under Third Circuit L.A.R. 34.1(a)
June 5, 2012

BEFORE:  SCIRICA, GREENAWAY, Jr., and NYGAARD, *Circuit Judges*


(Filed September 27, 2012)


_____

OPINION OF THE COURT
_____

NYGAARD, *Circuit Judge*

Following a jury trial, Appellant Markeith Webb was found guilty of armed robbery and of using and carrying a firearm during that armed robbery. He was sentenced to 199-months imprisonment, five years of supervised release and ordered to pay restitution. Webb appeals, raising various issues. We will affirm his conviction and sentence.

I.

During the robbery of the Lafayette Ambassador Bank, the Appellant was recognized by bank tellers as the grandson of an elderly bank customer. Webb had displayed a firearm during the robbery and had stolen nearly five thousand dollars. When removing the cash, Webb had taken two dye packs from two separate money drawers. As Webb fled the bank, a teller observed one of the dye packs explode and spray red colored dye in the area.

The day after the robbery, a local merchant contacted the authorities to report that he had currency that was discolored with red dye. After determining that the cash was used after the robbery, law enforcement got video surveillance footage showing Webb entering an Exxon Square convenience store and speaking with a clerk. That clerk identified Webb as someone she knew as "Pip," and that he had entered the store asking to exchange fifty dollars bills into smaller denominations. The clerk noticed red dye on the currency Webb was trying to exchange. Video footage also showed the car Webb was driving---a green Chevrolet Malibu registered to Webb's girlfriend. An address for Webb's girlfriend, Shaina Marie Holmes was obtained and the car was found at her residence. Police noticed red dye stains on the car's interior.

Webb was arrested while in possession of additional red-stained currency.

At a later meeting with authorities, Webb admitted to the Lafayette Ambassador bank robbery and to driving his girlfriend's green Chevrolet Malibu. He denied, however, ever threatening anyone during the course of the robbery. Lastly, he admitted to disposing of most of the damaged currency, reserving approximately $2500.00 for his personal use. At trial, the Government did not introduce any of Webb's statements as evidence against him.

## II.

On appeal, Webb raises several issues challenging his conviction and his sentence.

A.    *Franks* Hearing Error

Webb first argues that he was entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).[1] The District Court denied Webb's motion for a *Franks* hearing. Normally, we review the denial of a motion for suppression for clear error as to the underlying facts and exercise plenary review as to its legality. Inasmuch as the most demanding standard articulated by any court is *de novo*, and because the *de novo* standard of review is satisfied here, we need not determine the applicable standard today. When reviewing the District Court's refusal to hold a *Franks* hearing *de novo*, it is clear the court did not err because Webb failed to establish the requisite preliminary showing.

---

[1] A *Franks* hearing is a hearing to determine whether a police officer's affidavit used to obtain a search warrant was based on false statements by the police officer. *Franks v. Delaware*, 438 U.S. 154 (1978).

3

Webb argues that the warrant for his arrest was based on a flawed affidavit. He contends that the affidavit omitted certain facts, that these omissions were intentional or made with reckless disregard for the truth, and, as a result, there could be no probable cause to arrest him. We have conducted a *de novo* review of the record and conclude that Webb did not meet his burden of establishing he was entitled to a *Franks* hearing. First, we note that affidavits supporting warrants are presumptively valid. Webb offered no evidence in support of his request for a *Franks* hearing, and the District Court accordingly determined that he had failed to make a substantial showing that the affidavits reflected false statements that were made knowingly and recklessly. We agree with the District Court. Webb's argument focuses on an alleged falsity in two paragraphs of Detective Alonzo's affidavit. This allegation, even if true, is not enough to support an inference that Detective Alonzo acted recklessly or was deliberately untruthful. Even if the events at the bank did not occur as allegedly reported in the affidavit, that sheds little light on the affiant's veracity. *Franks* and its progeny make clear that a defendant must make a substantial showing that the affiant knew of or recklessly disregarded the informant's untruthfulness. The District Court committed no error in finding that Webb was not entitled to a *Franks* hearing.

B.      Denial of Motion for New Trial

Next, Webb argues that the District Court erred by denying his motion for a new trial because it was based on the destruction of exculpatory evidence. He points to the destruction of an envelope on which one teller had written notes, and bank forms that were provided to tellers after the robbery. The destruction of these pieces of evidence,

4

Webb maintains, entitled him to a new trial because the Government failed to turn them over to him during discovery.

Although framed in his brief as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), Webb's actual basis for a new trial is the destruction of exculpatory evidence. We examine this claim under a different standard. As has been noted, "[t]he Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two distinct universes. *Brady* and its progeny address exculpatory evidence that is still in the government's possession. *Youngblood* and *Trombetta* govern cases in which the government no longer possesses the disputed evidence." *United States v. Femia*, 9 F.3d 990, 993 (1st Cir. 1993). Although destruction of evidence may constitute a due process violation, "[a] defendant who claims destroyed evidence might have proved exculpatory . . . has to show the prosecution's bad faith in ordering or permitting its destruction." *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993). Absent proof of bad faith, "failure to preserve evidence that might be of use to a criminal defendant . . . is not a denial of due process." *Id*. To prove bad faith, there must be a "showing that the Government intentionally [tried] to gain some tactical advantage over [the defendant]."

Webb has not proven that the Government acted in bad faith. Detective Alonzo testified that the descriptions of the robber on the envelope matched the description given him by the same teller later in his investigation. There was no need to keep the repetitive notes on the envelope and discarding it does not rise to the level of an intentional act necessary to gain a tactical advantage over Webb. Therefore, the District Court did not err by denying Webb's motion.

5

C.	Improper Use of Proffer Agreement

"[A]ny statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" is not admissible against the defendant who "was a participant in the plea discussions." FED. R. EVID. 410; *see also* FED. R. CRIM. P. 11(f) (providing that the admissibility of any plea, plea discussion, or any related statement is governed by Rule 410). However, a defendant may waive his rights under Rule 410 and Rule 11, and allow the government to introduce statements made in the course of plea discussions, "as long as there is no 'affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily.'" *United States v. Hardwick*, 544 F.3d 565, 569-70 (3d Cir. 2008) (alteration in original) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995)). Here, Webb's proffer agreement provided that the government could use at trial statements that Webb made during the proffer, in the event that Webb were to make representations at trial inconsistent with those he had made at the proffer. Webb does not challenge the voluntariness of his proffer agreement. Instead, he raises a more generalized argument that his proffer agreement was invalid because of a lack of consideration.

The proffer letter states that the Government "will consider" Webb's proffer "in formulating an appropriate resolution to this matter." Webb might prefer that the proffer letter he signed include some clearer statement of the Government's contractual obligation. Although the written statement of the bargain set forth by the Government is minimal, it sufficiently sets forth the benefit the Government confers–an appropriate resolution of the matter. Put another way, the proffer letter, as written, obligated the

6

Government to hear and evaluate Webb's statements as an initial step toward a possible compromise. We are, therefore, satisfied that the proffer agreement sets forth consideration and is not invalid on that ground.

D.    Obstruction of Justice Enhancement

Lastly, Webb argues that his sentence was procedurally invalid because the District Court improperly applied a two-level sentencing enhancement based on obstruction of justice. We conclude that Webb's challenge to the obstruction of justice enhancement under section 3C1.1 is meritless. Application note 1in the commentary to this Guideline section states that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this [G]uideline if the conduct was purposefully calculated, and likely to thwart, the investigation or prosecution of the offense of conviction." U.S.S.G.§ 3C1.1 cmt. n.1. Briefly, the Government proffered recorded telephone conversations between Webb and his brother. During these conversations, Webb sought to have his brother confront the teller who had identified Webb as the robber. The District Court reasonably concluded that Webb's request that his brother confront a critical witness constituted an attempt to "threaten[ ], intimidat[e], or otherwise unlawfully influenc[e] ... [a] witness." U.S.S.G. § 3C1.1 app. n.4(A). The District Court did not err by applying these enhancements.

### III.

For all of these reasons, we will affirm the conviction and judgment of sentence of the District Court.

7