NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2530
_____

UNITED STATES OF AMERICA

v.

BARRY DOUGLAS,
also known as Shakeel Styles,

Barry Douglas,
                                Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cr-00449-001)
District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 2013

Before:  SLOVITER, JORDAN, NYGAARD, Circuit Judges

(Filed: April 23, 2013)


_____


OPINION
_____

SLOVITER, Circuit Judge.

Barry Douglas, who was convicted of robbing a bank in North Philadelphia in violation of 18 U.S.C. § 2113(d), appeals from the District Court's judgment of conviction and sentence.[1]

## I.

Douglas was initially linked to the robbery when a police officer discovered more than $4,000 in red-stained currency on his person during an arrest for an unrelated crime. At trial, the prosecution presented evidence that the currency was dyed red as a result of an exploding dye pack that a bank teller had placed in Douglas' bag during the robbery.

The Government also offered testimony from a bank employee who picked Douglas out of a photo array, from a witness who observed the robber fleeing from the bank, and from Douglas' ex-girlfriend who identified Douglas as the robber in bank security video footage.

After he was convicted, Douglas moved for a new trial, arguing that the prosecutor made improper statements during her closing statement and that the Government violated his Fourth Amendment rights by destroying the currency it recovered from him before testing it. The District Court denied Douglas' motion for a new trial and his motion for reconsideration from that denial. It then sentenced Douglas to 262 months imprisonment and ordered him to pay $11,580 in restitution and a $100 special assessment.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

On appeal, Douglas challenges the District Court's denial of his motions and argues that he should have been granted an evidentiary hearing to determine whether the prosecutor made improper statements during her summation. He also argues that the evidence of the red-stained currency should have been suppressed and that, as a result of the errors at trial, his conviction should be reversed.

## II.

When a district court has denied a motion to suppress, we review its factual findings for clear error and exercise plenary review over its application of the law to those facts. *See United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). Evidence seized during an unreasonable search or seizure in violation of the Fourth Amendment is inadmissible in a criminal prosecution. *See Terry v. Ohio*, 392 U.S. 1, 12 (1968).

In order to conduct a stop to investigate a crime, an officer must have reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The "nature and quality of the intrusion on personal security" caused by the stop must be justified by "the importance of the governmental interests alleged to justify the intrusion." *United States v. Hensley*, 469 U.S. 221, 228 (1985). [2] In this case, the officer had reasonable suspicion, and the intrusiveness of the stop was justified by the important governmental interests at stake.

---

[2] Douglas waived his argument that *Terry* stops to investigate completed misdemeanors are inappropriate because he did not raise the argument in the District Court. *United States v. Rose*, 538 F.3d 175, 182-85 (3d Cir. 2008) (holding that, absent a showing of good cause, suppression arguments not raised in district court are waived).

The officer stopped Douglas to investigate the alleged violation of a Pennsylvania Protection From Abuse order ("PFA") taken out by Douglas' ex-girlfriend, Tyisha Figueroa ("Figueroa"), pursuant to 23 Pa.C.S. § 6101 et seq. The officer learned of the potential violation after he was flagged down by Figueroa's mother, who gave him a detailed description of Douglas, and explained that Douglas had violated a PFA by visiting her family's barbershop where her daughter was working at the time. After driving in the direction indicated by Figueroa's mother, the officer stopped Douglas who fit the description given by Figueroa's mother and who admitted that he had come from a barbershop. The officer therefore had reasonable suspicion to believe that Douglas had recently violated a PFA.

The significant Government interest in enforcing a PFA justified the brief intrusion of the stop. PFAs are designed to "further the Commonwealth's compelling State interest to protect victims of domestic violence from abuse." Act of Nov. 10, 2005, 2005 Pa. Laws 335. The stop, which lasted no more than seven minutes, was reasonably designed to protect this important state interest.

The officer's consultation of his mobile data terminal quickly confirmed the existence of the PFA, and Figueroa arrived a few minutes later to provide a firsthand account of the violation.

The officer's decision to confine Douglas to the back of the police car was also reasonable.[3] Placing Douglas in the police car allowed the officer time to investigate and

---

[3] At trial, Douglas claimed that he was handcuffed before being placed in the car, but the police officer said he did not handcuff Douglas until after he was arrested. The District

4

prevented confrontation between Douglas and Figueroa and her mother.[4] Because the

intrusiveness of the stop was justified by the importance of the Government interest in

protecting victims of domestic abuse, the District Court did not err in denying Douglas'

motion to suppress the red-stained currency.

### III.

Douglas also contends that he should have been granted a new trial because the

Government violated his Fourth Amendment rights by destroying the red-stained

currency before it could be tested.[5] The bad faith destruction of evidentiary material that

is potentially useful to the defendant violates a defendant's Fourteenth Amendment

rights. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). Here, there is no

evidence that the destruction was in bad faith. In its brief before the District Court, the

Government proffered that the Philadelphia FBI always returns red-stained currency to

banks for eventual destruction.[6] Because the return and destruction of currency was

standard practice, and because there is no other evidence that the Government acted in

---

Court did not make a factual finding on when Douglas was handcuffed. Even if he had been handcuffed before being placed in the car, the stop was not excessively intrusive.
[4] Douglas argues that he should have been asked to sit on the curb or had his information collected for a later follow up by the police. The Supreme Court has instructed us not to "indulge in unrealistic second-guessing" in "a swiftly developing situation." *United States v. Sharpe,* 470 U.S. 675, 686 (1985).
[5] We exercise plenary review of a district court's conclusions of law, and we review its factual findings for clear error. *United States v. Pelullo*, 14 F.3d 881, 886 (3d Cir. 1994).
[6] Douglas contends that this proffer is unreliable and that it was unusual for the FBI to return stained currency for destruction before the source of the stain was analyzed. He cites FBI manuals and court opinions to support his argument. These sources, however, only suggest that the currency could have been tested and that it sometimes was tested in other jurisdictions. Douglas does not contradict the Government's proffer that in Philadelphia red-stained currency was normally promptly returned for destruction.

bad faith, the District Court did not err in refusing to grant Douglas a new trial. *See United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993).

IV.

Douglas claims that at trial, the prosecutor improperly impugned his attorney, and argues that the District Court erred by failing to hold an evidentiary hearing to investigate the prosecutor's statements. We review a district court's decision regarding the management of a trial for abuse of discretion. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609 (3d Cir. 1995).

Douglas bases his claims of misconduct on alleged statements that were not objected to at trial and that do not appear in the audio recordings or transcripts of the trial. The affidavits submitted by Douglas in support of his claim are inconsistent with one another and contradicted by the affidavits made by the prosecutors. As we recognized in *United States v. Gilsenan*, there are "compelling reasons not to hold a hearing involving the recalling of discharged jurors." 949 F.2d 90, 97 (3d. Cir. 1991). The District Court did not abuse its discretion by concluding that it was unnecessary to recall the jury to hold evidentiary hearings based on weak allegations.

Douglas also contends that the prosecutor's "vouching, out of record 'expert' testimony and personal attacks" merit reversal. Appellant's Br. at 38. Because Douglas did not raise a contemporaneous objection to the alleged prosecutorial misconduct in the closing argument, we review the District Court's decision not to order a new trial for plain error. *United States v. Bethancourt*, 65 F.3d 1074, 1079-80 (3d Cir. 1995). We evaluate allegedly improper statements by a prosecutor in "the overall context of the

6

statements in the trial record." *United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir. 1999).

Douglas bases his allegation of improper personal attacks on two statements in the prosecutor's closing argument in which the prosecutor said that the defense attorney was "making up" facts and evidence. App. at 587, 589. Although the prosecutor could have chosen better language, it is clear from the context of the closing argument that the prosecutor was criticizing the defense attorney's misstatements rather than personally impugning her. It was therefore not plain error for the District Court to refuse to grant a new trial based on these statements by the prosecutor. *See, e.g.*, *United States v. Lore*, 430 F.3d 190, 213-14 (3d Cir. 2005).

Douglas also argues that the prosecutor improperly provided expert testimony by saying, in reference to the red dye released by the dye packet at the bank, "Believe me, red dye can be gotten off or people would be walking around with red dye for the rest of their lives." App. at 589. From the context of the closing statement it is clear that this statement was an appeal to common sense, rather than a claim of expertise.

Finally, Douglas argues that the prosecutor made three statements that qualify as improper vouching. Vouching occurs when a prosecutor assures the jury of the credibility of a witness and "bases his assurance on either his claimed personal knowledge or other information not contained in the record." *Lore*, 430 F.3d at 211.

In the first statement challenged by Douglas, the prosecutor said that a witness had testified that she had "immediately" picked Douglas' photo out of a line up. App. at 536. However, it was the detective who administered the photo lineup, not the witness, who

7

said that her identification was immediate.  In context, this appears to be a simple misattribution.  The second statement highlighted by Douglas relates to another witness who saw Douglas at the bank.  The prosecutor stated that the witness was "not trying to identify the photograph of Barry Douglas by thinking about the [surveillance] videos." App. at 543.  As the Government points out in its brief, this statement has a basis in the witnesses' testimony and was therefore appropriate.  The third statement to which Douglas objects is the prosecutor's assertion in closing that "Ms. Figueroa is not out to get Barry Douglas . . . .  [S]he came to the court reluctantly, but she came committed to tell you the truth."  App. at 544.  This statement provides a reasonable gloss on Figueroa's testimony during which she explained that she had "never been dishonest throughout this whole process."  App. at 444.

In conclusion, the prosecutor's statements, even when their possible effects are combined, do not meet the standards for improper vouching outlined in *Lore*.  *See* 430 F.3d at 211-12.  It was therefore not plain error for the District Court to refuse to grant Douglas a new trial.

IV.

For the above reasons, we will affirm the judgment of the District Court.

8