[963 NE2d 1226, 940 NYS2d 525]

SPCA of Upstate New York, Inc., et al., Appellants, v American Working Collie Association et al., Respondents.

Argued January 4, 2012; decided February 9, 2012

## POINTS OF COUNSEL

*Stanclift, Ludemann & McMorris, P.C.*, Glens Falls (*Martin J. McGuinness* of counsel), for appellants. I. Long-arm jurisdiction exists over respondents because they purposefully transacted business in New York and there is a clear connection between the transaction and appellants' claim for defamation. (*Legros v Irving*, 38 AD2d 53; *Montgomery v Minarcin*, 263 AD2d 665; *Talbot v Johnson Newspaper Corp.*, 71 NY2d 827; *Best Van Lines, Inc. v Walker*, 490 F3d 239; *Longines-Wittnauer Watch Co. v Barnes & Reinecke*, 15 NY2d 443; *Parke-Bernet Galleries v Franklyn*, 26 NY2d 13; *Sovik v Healing Network*, 244 AD2d 985.) II. It is poor public policy to allow defendant to become immunized from suit in New York simply because the underlying cause of action is for defamation.

*Goldberg Segalla LLP*, Albany (*Jonathan Bernstein* of counsel), for respondents. I. Personal jurisdiction in New York over defendants does not exist warranting the Appellate Division's memorandum and decision to be affirmed. (*Montgomery v Minarcin*, 263 AD2d 665; *Legros v Irving*, 38 AD2d 53, 30 NY2d 653; *Talbot v Johnson Newspaper Corp.*, 71 NY2d 827; *GTP Leisure Prods. v B-W Footwear Co.*, 55 AD2d 1009; *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65; *Sterling*

*Natl. Bank & Trust Co. of N.Y. v Fidelity Mtge. Invs.*, 510 F2d 870; *Henderson v Immigration & Naturalization Serv.*, 157 F3d 106; *Best Van Lines, Inc. v Walker*, 490 F3d 239; *McKee Elec. Co. v Rauland-Borg Corp.*, 20 NY2d 377; *Hanson v Denckla*, 357 US 235.) II. Defendants' constitutional rights will be violated if jurisdiction in New York is asserted. (*Burger King Corp. v Rudzewicz*, 471 US 462; *International Shoe Co. v Washington*, 326 US 310; *Asahi Metal Industry Co. v Superior Court of Cal., Solano Cty.*, 480 US 102; *World-Wide Volkswagen Corp. v Woodson*, 444 US 286; *Metropolitan Life Ins. Co. v Robertson-Ceco Corp.*, 84 F3d 560; *LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210; *Legros v Irving*, 38 AD2d 53.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

The question presented in this defamation action is whether plaintiffs established personal jurisdiction over the out-of-state defendants under CPLR 302 (a) (1), New York's long-arm statute. We find that they did not.

Plaintiff SPCA of Upstate New York is a New York corporation and plaintiff Cathy Cloutier is its executive director. Defendant American Working Collie Association (AWCA) is an Ohio not-for-profit corporation and its president, defendant Jean Levitt, is a Vermont resident. The AWCA is a volunteer-based club that is devoted to promoting the welfare and protection of collies. The organization has members throughout the United States—including 13 in New York at the time of the events herein—but has neither an office nor employees in New York. The AWCA maintains a Web site (www.awca.net), generally containing photographs and anecdotes about particular collies, as well as messages from the AWCA's president providing collie-related information of interest to the group's members. This action arises out of allegedly defamatory statements published by defendants on the AWCA Web site.

On October 17, 2007, 23 mistreated dogs (collies and dachshunds) were rescued from a residence in Fort Ann, New York and placed with plaintiff SPCA in its Queensbury, New York facility. Soon thereafter, while in Vermont, defendant Levitt telephoned plaintiff Cloutier to offer the AWCA's assistance with the subject animals. Subsequently, the AWCA sent the SPCA a donation in the amount of $1,000. Levitt placed a second telephone call from Vermont to advise Cloutier that the AWCA had purchased collars and leashes for the dogs and to make arrangements to deliver those materials.

Levitt visited the SPCA facility on November 7, 2007 for less than one hour, at which time Levitt delivered the leashes and collars and toured the facility. Levitt also wrote a personal check to the SPCA to cover the costs of certain veterinary care. Later that month, Levitt telephoned Cloutier from Vermont for the third and final time and, during that call, they discussed the appropriate care for one of the collies. In addition, on several weekends, volunteers who were affiliated with AWCA assisted in providing care for the dogs. Levitt again visited the SPCA facility on January 5, 2008, for about an hour and a half, to check on the collies.

After Levitt's return to Vermont, she generated a series of writings addressing the condition of the collies and the treatment being provided by the SPCA. These writings were posted to the AWCA Web site periodically, beginning January 13, 2008. Based on statements contained in the writings, plaintiffs commenced this defamation action in January 2009. Defendants answered, asserting as relevant here, the affirmative defense of lack of personal jurisdiction. Supreme Court denied defendants' motion to dismiss, finding that personal jurisdiction had been obtained over the defendants under CPLR 302 (a) (1) because Levitt purposefully availed herself of this state's benefits and protections through her trips to New York and that there was a substantial relationship between her activities here and the allegedly defamatory statements.

The Appellate Division reversed, granted defendants' motion and dismissed the complaint (74 AD3d 1464 [3d Dept 2010]). The Court determined that, given New York's "narrow approach" to long-arm jurisdiction where defamation cases are concerned, defendants' contacts with the state were insufficient to support a finding of personal jurisdiction. This Court granted plaintiffs leave to appeal (15 NY3d 716 [2010]), and we now affirm.

CPLR 302 outlines acts that can form the basis for obtaining personal jurisdiction over non-domiciliaries. Long-arm jurisdiction can be premised on the commission of a tortious act—perpetrated either within the state or outside the state, causing injury within the state—but provides an express statutory exception for "cause[s] of action for defamation of character arising from the act" (CPLR 302 [a] [2], [3]). Although defamation claims therefore cannot form the basis for "tortious act" jurisdiction, such claims may proceed against non-domiciliaries who transact business within the state and thereby satisfy the

requirements of CPLR 302 (a) (1). Defamation claims are accorded separate treatment to reflect the state's policy of preventing disproportionate restrictions on freedom of expression— though, "[w]here purposeful transactions of business have taken place in New York, it may not be said that subjecting the defendant to this State's jurisdiction is an 'unnecessary inhibition on freedom of speech or the press' " (*Legros v Irving*, 38 AD2d 53, 55-56 [1st Dept 1971], *lv dismissed* 30 NY2d 653 [1972], quoting Weinstein-Korn-Miller, NY Civ Prac, vol 1, ¶ 302.11).

In order to demonstrate that an individual is transacting business within the meaning of CPLR 302 (a) (1), "there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts" (*McGowan v Smith*, 52 NY2d 268, 271 [1981]). Moreover, there must be "some articulable nexus between the business transacted and the cause of action sued upon" (*McGowan*, 52 NY2d at 272). Phrased differently, there must be "a 'substantial relationship' between [the purposeful] activities and the transaction out of which the cause of action arose" (*Talbot v Johnson Newspaper Corp.*, 71 NY2d 827, 829 [1988]; *see also Johnson v Ward*, 4 NY3d 516, 519 [2005]).

When determining whether the necessary substantial relationship exists between a defendant's purposeful activities and the transaction giving rise to the defamation cause of action, we have considered whether the relationship between the activities and the allegedly offending statement is too diluted (*see Talbot*, 71 NY2d at 829). Certain types of conduct will plainly satisfy the required nexus (*see e.g. Legros*, 38 AD2d at 56 [where a book containing allegedly defamatory statements was researched and printed in New York and where the publishing contract was negotiated and executed in this state, the cause of action was deemed to arise out of the transaction]; *Montgomery v Minarcin*, 263 AD2d 665, 667-668 [3d Dept 1999] [an allegedly defamatory television news report that was researched (over a six-week period), written, produced and broadcast in New York was sufficient to establish the transaction of business within the state]). To the contrary, where the contacts are more circumscribed and not directly related to the defamatory statement, defendants have prevailed (*see e.g. Talbot*, 71 NY2d at 829 [defendant daughter's attendance at a New York college over two years prior to the allegedly defamatory statements made by her defendant father, relating a description of certain conduct observed by the daughter while a student in New York, was

insufficient to establish the required nexus between any purposeful activities in this state and the cause of action at issue]; *Copp v Ramirez*, 62 AD3d 23 [1st Dept 2009], *lv denied* 12 NY3d 711 [2009] [no personal jurisdiction over non-domiciliaries who made allegedly defamatory statements in New Mexico to New York reporters from NBC's Dateline program three years after each spent 60 hours or less at Ground Zero for purposes of producing a potential documentary]).

Here, defendants' activities in New York were quite limited. Levitt's three phone calls and two short visits—totaling less than three hours—in addition to the donation of cash and leashes, do not constitute purposeful activities related to the asserted cause of action that would justify bringing her before the New York courts. Moreover, it is of importance that the statements were not written in or directed to New York. While they were posted on a medium that was accessible in this state, the statements were equally accessible in any other jurisdiction.

Further, there is no substantial relationship between the allegedly defamatory statements and defendants' New York activities. Levitt did not visit New York in order to conduct research, gather information or otherwise generate material to publish on the group's Web site. Instead, defendants engaged in limited activity within the state in order to help provide financial and medical assistance for the dogs. The alleged mistreatment was observed during the course of those two brief visits but written about after Levitt returned to Vermont. The AWCA neither placed the dogs with plaintiffs in New York nor complained of its volunteers' treatment by plaintiffs, either one of which might well entail a sufficiently substantial relationship between the allegedly defamatory statements and defendants' New York activities as to warrant a finding of long-arm jurisdiction. The connection here is too tangential to support the exercise of personal jurisdiction over defendants.

As the Second Circuit has observed, "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation" (*Best Van Lines, Inc. v Walker*, 490 F3d 239, 248 [2d Cir 2007]). Through CPLR 302, the Legislature has manifested its intention to treat the tort of defamation differently from other causes of action and we believe that, as a result, particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing

that they purposefully transacted business here and that the proper nexus exists between the transaction and the defamatory statements at issue.

In light of the foregoing, it is unnecessary to address defendants' constitutional argument.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting). I respectfully dissent because, in my view, the American Working Collie Association (AWCA) and its president, Jean Levitt, engaged in "purposeful activities" in New York and there was a "substantial relationship" between those activities and the defamation causes of action lodged by the SPCA of Upstate New York, Inc. (SPCA) and its executive director, Cathy Cloutier.

Under CPLR 302 (a) (1)—the jurisdictional basis upon which the SPCA and Cloutier rely—long-arm jurisdiction over a non-domiciliary exists where a defendant transacts business in New York and the claim asserted arises from that transaction (*see Johnson v Ward*, 4 NY3d 516, 519 [2005]). "It is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]).

The majority classifies activities of AWCA and Levitt as being "quite limited" (majority op at 405), but the record is littered with instances where the AWCA—whose express mission is the promotion of "the well being of collies"—"purposefully avail[ed] itself of the privilege of conducting activities within [New York]" (*Ehrenfeld v Bin Mahfouz*, 9 NY3d 501, 508 [2007] [citations omitted]), such that it "should reasonably . . . expect[ ] to defend its actions" here (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 [2006]).

Even construing CPLR 302 (a) (1) "more narrowly in defamation cases" (*Best Van Lines, Inc. v Walker*, 490 F3d 239, 248 [2d Cir 2007]), the facts here certainly meet the standard. Levitt, upon learning that 23 collies and dachshunds had been rescued from a home in Fort Ann, New York, initiated telephone contact with the SPCA and "offered" AWCA's "services," which included the donations of collars and leashes, along with a check from the AWCA for $1,000. When the collars and leashes

arrived, Levitt contacted Cloutier a second time and, during that telephone conversation, agreed to meet with Cloutier to facilitate the delivery of those items. At this first New York meeting, Levitt again offered AWCA's assistance and wrote a personal check to cover veterinary costs of the rescued dogs. Shortly after that visit, Levitt telephoned the SPCA to discuss arrangements she had made to send one of the rescued collies to a rehabilitation center. Nearly two months later, on January 5, 2008, Levitt visited the SPCA facility "to check on the care that was being given by the SPCA to the [rescued dogs]." In addition to these activities, the AWCA, over eight weekends, sent members and volunteers to the SPCA to assist in exercising the dogs and cleaning their crates. That Levitt's visits may have been brief is irrelevant; the AWCA conducted a significant number of "purposeful activities" in New York, such that they could hardly be classified as "quite limited," particularly in light of the monies and items donated and the services provided.

Nor can it be said that there was no "substantial relationship" between these "purposeful activities" and Levitt's alleged defamatory statements. Of significance is the fact that the first alleged defamatory comment was posted by Levitt on January 13, 2008, a week after her second visit to the SPCA, detailing Levitt's observations during the second visit which, according to the post, was precipitated by complaints made to her by AWCA volunteers about the condition of the SPCA facility. Moreover, each of the alleged defamatory posts addressed the conditions of the rescued dogs in New York, and the inference can be drawn from the complaint that Levitt's purpose for going to New York (and for sending volunteers to assist at the SPCA) was to garner attention for the plight of these rescued dogs in order to promote their well being. Finally, several of the alleged defamatory posts reference accounts given by AWCA volunteers to Levitt concerning the conditions of the SPCA facility. For an organization whose "purpose . . . is to promote the well being of collies," it cannot reasonably be said that there was no nexus between AWCA's purposeful activities and the alleged defamatory comments.

Finally, the majority's "free speech" concern is illusory in the context of this case. CPLR 302 (a) (2) and (3), long-arm provisions that address tortious acts committed by a defendant within the state, and tortious acts committed out of state but cause injury in New York, respectively, exclude defamation claims from their reach. CPLR 302 (a) (1) does not contain such an exception, and for good reason: "There is a clear distinction

between a situation where the only act which occurred in New York was the mere utterance of the libelous material and on the other hand, a situation where purposeful business transactions have taken place in New York giving rise to the cause of action" (*Legros v Irving*, 38 AD2d 53, 55 [1st Dept 1971]). In the latter case, "it may not be said that subjecting the defendant to this State's jurisdiction is an 'unnecessary inhibition on freedom of speech or the press'" (*id.* at 55-56). So long as a plaintiff can establish purposeful activities on the part of the defendant and a substantial relationship between those activities and the defamation claim, there is little danger of chilling free speech through the exercise of long-arm jurisdiction.

Judges CIPARICK, READ and JONES concur with Chief Judge LIPPMAN; Judge PIGOTT dissents in a separate opinion in which Judges GRAFFEO and SMITH concur.

Order affirmed, with costs.